UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SKIDMORE,                                  Case No. 13-12826

                    Plaintiff,                    Paul D. Borman
v.                                                United States District Judge

INTERNAL REVENUE SERVICE, *et al*,                Michael Hluchaniuk
                                                  United States Magistrate Judge

                    Defendants.
_____/

## REPORT AND RECOMMENDATION
## MOTION FOR SUMMARY JUDGMENT (Dkt. 15)

## I.      PROCEDURAL HISTORY

Plaintiff filed a complaint for a tax refund under 26 U.S.C. § 7422 on June 28, 2013.  (Dkt. 1).  This matter was referred to the undersigned for all pretrial proceedings on November 20, 2013.  (Dkt. 9).  The United States filed an answer to the complaint on December 16, 2013.  (Dkt. 11).  A Case Management Order was entered on March 21, 2014, including a discovery deadline of September 18, 2014.  (Dkt. 14).  On July 18, 2014, the United States filed a motion for summary judgment.  (Dkt. 15).  On that same date, the United States filed a motion to stay discovery pending a decision on its motion for summary judgment, which was granted.  (Dkt. 16, 17).  On August 11, 2014, plaintiff filed a response to the motion for summary judgment.  (Dkt. 21).  The United States filed a reply on

1

August 19, 2014.  (Dkt. 24).  Plaintiff, with leave of the Court, filed a sur-reply on September 3, 2014.  (Dkt. 26).  This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Complaint

On May 26, 2006, plaintiff purchased a home located in West Bloomfield, Michigan for $265,000.  (Dkt. 1).  At the time of the sale, the sellers had specific knowledge of the extensive problems with water penetration from the roof and foundation, structural problems, mold, and other defects.  Plaintiff contends that the sellers misrepresented the condition of the house to plaintiff and actively concealed evidence of the problems before plaintiff's and the home inspector's visits to the property.  Plaintiff says he was not aware of the problems at the time of purchase.  As a result of the fraud perpetrated by the sellers, plaintiff significantly overpaid for the house and ultimately lost the house.

The complaint alleges that the Michigan state court held that the sellers misrepresented the state of the property.  Plaintiff hired an expert appraiser who indicated that the value of the property in 2006 with the undisclosed damages was only $140,000.  Thus, the loss to plaintiff was $125,000 along with additional

loss items under the statute.  According to the complaint, this loss was not reimbursed to plaintiff through insurance or otherwise.  Plaintiff timely submitted 1040X amended returns for the tax years 2006 and 2007, including a claim for a casualty loss for the financial damages incurred by the purchase of the property due to fraud and misrepresentation.  The amount of the casualty loss is $20,869 (2006 = $14,956; 2007 = $5,913).

Plaintiff contends that the IRS lost plaintiff's amendments and mismanaged the entire claim process.  The IRS Examiner, after unsuccessfully exhausting other improper means of rejecting the claim, finally rejected the claim on her incorrect and unfounded assertion that there was no basis for a casualty loss in the law.  The appeals division upheld the rejection of the refund claim.  In November 2012, plaintiff finally received a letter denying his claim.  Plaintiff contacted Leonard Bartold, an Appeals Manager at the IRS, to request clarification of the IRS' reasoning.  No further explanation was received.  Plaintiff now seeks a refund for the casualty loss and/or theft claim.

B.    Defendant's Motion for Summary Judgment

While defendant does not concede that plaintiff suffered a casualty or theft loss as contemplated by 26 U.S.C. § 165, defendant also contends that this issue need not be addressed at this time.  Rather, defendant argues that plaintiff did not suffer a deductible loss in 2006 because he had a reasonable prospect of recovery

3

from the sellers that lasted until 2009, when the amount of the alleged loss could finally be computed and ascertained for purposes of the Internal Revenue Code.

Section 165 of the I.R.C. permits, in pertinent part, deductions for losses "sustained during the taxable year and not compensated for by insurance or otherwise" that arise from some "casualty" or "theft." 26 U.S.C. § 165(a), (c)(3). The Treasury Regulations promulgated under 26 U.S.C. § 165 echo the statute in limiting deductions to when the loss "can be ascertained with reasonable certainty whether or not such reimbursement will be received." 26 C.F.R. § 1.165-1(d)(2)(i). No loss deduction is permitted in any year for which there exists "a reasonable prospect of recovery." *Id*. In the case of any loss, if "there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained []...until it can be ascertained with reasonable certainty whether or not such reimbursement will be received." *Id*. The kinds of factors that suggest that all or part of a loss will not be reimbursed "with reasonable certainty" include events such as the adjudication, settlement, or abandonment of the claim. *Id*. According to defendant, this rule applies with equal force to theft losses. *See* 26 C.F.R. § 1.165-1(d)(3) (adopting virtually identical language to that found in 26 C.F.R. § 1.165-1(d)(2) with respect to theft losses) and 26 C.F.R. § 1.165-8(a)(2); *Ramsay Scarlett & Co., Inc. v. Comm'r*, 521 F.2d 786, 787 (4th

4

Cir. 1975), *aff'g* 61 T.C. 795 (1974); *Rainbow Inn, Inc. v. Comm'r*, 433 F.2d 640, 642-43 (3d Cir. 1970). Thus, defendant maintains that when a taxpayer possesses a claim for reimbursement in the year the theft is discovered, a loss is not sustained for purposes of 26 U.S.C. § 165(a) as long as and to the extent that there remains a reasonable prospect of recovery with respect to such claim. 26 C.F.R. § 1.165-1(d)(3); *see Scofield's Estate v. Comm'r*, 266 F.2d 154, 159-60 (6th Cir. 1959) ("at least prima facie weight to the good faith determination of a taxpayer that recovery of a given loss is worth pursuing by litigation.").

A reasonable prospect of recovery exists when the taxpayer has bona fide claims for recoupment from third parties or otherwise, and there is a substantial possibility that such claims will be decided in his favor. *Nat'l Home Products, Inc. v. Comm'r*, 71 T.C. 501, 525-26 (1979), quoting *Ramsay Scarlett*, 521 F.2d at 811. The standard is one of foresight, focusing on what was a "reasonable expectation" as of the close of the taxable year for which the deduction is claimed. *Id.*; *see Dawn v. Comm'r*, 675 F.2d 1077, 1078 (9th Cir. 1982); *Ramsay Scarlett & Co.*, 61 T.C. at 811 (inferring reasonable prospect of recovery existed in 1965 even though suit not filed until 1967); *Scofield's Estate*, 266 F.2d at 159; *see also Parmelee Transp. Co.*, 351 F.2d 619, 628 (Ct. Fed. Cl. 1965) (observing that taxpayer carries the burden of proving "no reasonable prospect" of recovery of the loss); *Geisler v. C.I.R.*, 955 F.2d 47 (9th Cir. 1992) (unpublished opinion) (citing

5

*Dawn* for the proposition that "[t]axpayer's presumptive state of mind, as

evidenced by the filing of a lawsuit, goes far toward showing the reasonableness

of their prospect of recovery."). Moreover, the filing of a lawsuit to recover the

loss gives rise to an inference that plaintiff had such a claim and indeed pursued it.

*See Lapin v. Comm'r*, 956 F.2d 1167 (9th Cir. 1992) (unpublished opinion) (citing

*Dawn*, 675 F.2d at 1078); *Gale v. Comm'r*, 41 T.C. 269, 276 (1963); *Zinn v.*

*United States*, 885 F.Supp.2d 866, 873 (N.D. Ohio 2012); *see also McCullough v.*

*C.I.R.*, T.C. Memo. 1990-653 (1990) (rejecting taxpayer's claim for theft loss

deduction in 1985 or 1986 since taxpayer filed lawsuit in 1988 to recover the

losses). Only when the claims are exhausted does the prospect of recovery (or an

absence of recovery) become known to a degree that will permit a deduction at

that time. 26 C.F.R. § 1.165-1(d)(2)(i); *see also Brill v. United States*, 2011 WL

249740 (N.D. Cal. Jan. 26, 2011).

Defendant points out that plaintiff bears the burden of proving with

reasonable certainty as of the end of 2006 that his loss would never be recovered.

*See Jeppsen v. Comm'r*, 128 F.3d 1410, 1418 (10th Cir. 1997), *cert. denied*, 524

U.S. 916 (1998). If plaintiff's prospect of recovery was "simply unknowable" at

the end of 2006, then he would not be entitled to take the casualty or theft-loss

deduction in that year. *Jeppsen*, 128 F.3d at 1418; *see also Vincentini*, 429

Fed.Appx. 560, 564 (6th Cir. 2011) (explaining that "[s]peculation and conjecture

6

will not support a taxpayer deduction under this provision"). Here, defendant

contends that plaintiff is not eligible to claim a casualty or theft loss deduction on

his amended 2006 federal income tax return because he had a reasonable prospect

of recovery in that year. Rather, far from being merely a "prospect," plaintiff

actually pursued his claims against the sellers in Michigan state court through a

civil action filed in 2008 – a case that was ultimately resolved in his favor in the

amount of $40,000 in 2009. (Dkt. 15, Ex. A). According to defendant, in terms of

the applicable regulations, the transaction was not "closed" in 2006 because the

amount of the loss was not "fixed," and the deduction is therefore barred. *See* 26

C.F.R. § 1.165-1(d)(1).

Therefore, pursuant to § 165 and the corresponding Treasury Regulations,

the alleged casualty/theft losses were not sustained in 2006 because a reasonable

prospect of recovery existed at least until 2009, when the state court litigation

involving the Property ended and plaintiff received a settlement. Instead,

defendants says that plaintiff should have claimed the deduction in the 2009 tax

period. Plaintiff seeks a refund from the United States Treasury in the amount of

$20,869.00 (plus interest) arising out of casualty/theft losses deductions for the

2006 tax year. However, defendants maintain that the facts do not support the

recognition of any losses under 26 U.S.C. § 165 and the pertinent Treasury

Regulation for the year 2006 because there existed a reasonable prospect of

recovery until 2009.  Therefore, the United States respectfully moves this Court to enter judgment in its favor and dismiss plaintiff's complaint, with prejudice, in its entirety.

C.     Plaintiff's Response

According to plaintiff, defendant claims without any factual or legal support that plaintiff's claim cannot be supported aside from the issue of whether the claim was submitted for the correct year.  Defendant does not seek summary judgment on that basis, admitting that plaintiff's claims are based in the facts, requiring "fact intensive inquiries."  *Id*.  Plaintiff wants to clarify that the cases provided by defendant in Section "a" of its brief are not on point, and defendant only addresses plaintiff's casualty loss claim, leaving plaintiff's theft loss claim untouched.

Defendant's motion is premised on the factual question of whether there was a "reasonable prospect of recovery" in 2006.  According to plaintiff, the facts are disputed and summary judgment is improper.  Pursuant to 26 C.F.R. § 1.165-1(d)(2)(i), "whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances."  Plaintiff contends that defendant misunderstands the law and that his refund claim was correctly submitted, in part, for 2006 with a carry-over to 2007.  Pursuant to 26 C.F.R. § 1.165-1(d)(2)(ii), a claim is appropriately submitted for the year of discovery, even if there is a claim

for a partial recovery, if there is not a reasonable prospect that the recovery will be complete. The statute states, in relevant part, "[i]f in the year of the casualty or other event a portion of the loss is not covered by a claim for reimbursement with respect to which there is a reasonable prospect of recovery, then such portion of the loss is sustained during the taxable year in which the casualty or other event occurs. For example, if property having an adjusted basis of $10,000 is completely destroyed by fire in 1961, and if the taxpayer's only claim for reimbursement consists of an insurance claim for $8,000 which is settled in 1962, the taxpayer sustains a loss of $2,000 in 1961." *Id.*

In this case, as in the statutory example, plaintiff says that he did not have a reasonable prospect of a complete recovery in 2006. Plaintiff discovered, through substantial research into the Sellers' professions, family, and assets, in 2006 that the sellers of the Subject Property did not have the means to compensate him entirely for the misrepresentation that they perpetrated on him. In the second half of 2006, plaintiff began evaluating whether to pursue litigation against the sellers. In the fall of 2006, plaintiff researched the Sellers online and with neighbors. Plaintiff found the following facts: 1) the sellers were a correctional officer and a secretary by profession, 2) the sellers were nearing retirement, such that they were likely at the heights of their careers, 3) the sellers had several children with some in college, 4) the sellers had moved out of the city and downsized to a small house,

9

and 5) neighbors indicated that the Sellers appeared to struggle financially.  (Dkt. 21, Ex. 1, Affidavit of Daniel Skidmore, ¶¶ 3-7).  Plaintiff assessed that based on the facts above, the Sellers could not possibly have the necessary assets to reimburse plaintiff entirely for the losses incurred due to the Sellers' misrepresentations.  *Id.* at ¶ 8.  Additionally, plaintiff was aware that, even if the Sellers did have assets in the form of retirement or pension assets, recovery from these assets would be unlikely, difficult, costly, and gradual, such that it was not worth pursuing.  *Id.* at ¶ 9.  As a result, plaintiff contends that he did not have a reasonable belief that he could obtain a recovery from the Sellers.  *Id.* at ¶ 10.  Plaintiff did not file suit in 2006 because he did not believe there was a reasonable prospect or recovery against the sellers in that year.  *Id.*  Plaintiff doubted that he could obtain a recovery for the reasons stated above.  *Id.* at ¶ 11.

Unfortunately, plaintiff subsequently found that it was impossible for him to bear the losses by himself without at least a partial recovery from the Sellers.  *Id.* at ¶ 12.  As a result, in late 2007, plaintiff reluctantly began preparing for litigation.  According to plaintiff, when he did file suit in 2008, the facts also clearly show that he only anticipated a "partial" recovery.  Plaintiff's initial settlement position, communicated to the Sellers in early 2008, was for $40,000, which again would have only represented a "partial" recovery.  *Id.* at ¶ 14.  The Sellers' attorney absolutely balked at that amount, and stated that the Sellers

would not consider anything even close to that amount.  *Id*. at ¶ 15.  Later in 2008, the Sellers told plaintiff that they would declare bankruptcy before settling for that amount because their debt would be greater than their assets.  *Id*. at ¶ 16.  In 2008, the attorney fees for the matter had grown so large that it was very clear that there was no prospect of even a partial recovery.  *Id.* at ¶ 18.  Thus, plaintiff contends that he did not have a reasonable prospect of full recovery in 2006 or at any time thereafter.  *Id*. at ¶ 19.  Rather, Plaintiff only hoped, at best, for a partial recovery in 2006.  Thus, plaintiff has appropriately claimed a refund for 2006.  To the extent that defendant disputes the facts presented by plaintiff, he contends that there is, therefore, a genuine dispute as to the facts, rendering summary judgment improper.  And, according to plaintiff, defendants presents no evidence in support of its claim that plaintiff had anything more than an expectation of partial recovery.

Plaintiff also disputes defendant's contention that plaintiff never submitted a refund claim for 2009 or some other year with the IRS or that defendant has not admitted the fact that there was no reasonable prospect of recovery in 2006.  According to plaintiff, he repeatedly discussed the year of the claim with the IRS.  *Id.* at ¶¶ 19-20.  Defendant raised the issue of whether the claim was filed for the correct year shortly after plaintiff's refund claim.  *Id.*  On February 21, 2011, plaintiff sent a letter to the IRS noting the question of what the correct year for

filing was and the ambiguity that defendant now claims as a basis for a different year. *Id*. at ¶ 21; Ex. 2, pg. 2, ¶ 2. Plaintiff subsequently discussed this issue during a telephone conversation with staff at the IRS. (Dkt. 211, Ex. 1, ¶ 22). Plaintiff laid out the facts above as his reasoning for filing the claim in 2006. *Id*. at ¶ 23. At the same time, plaintiff specifically requested that his claim for refund be considered for all subsequent years, given that the statutes and the factual situation lead to multiple different potential approaches to filing the refund claim. *Id*. At that point, defendant stopped claiming that the year of filing was incorrect, but rather proceeded in treating the claim as if it was correctly filed for 2006. *Id*. at ¶ 24. Plaintiff understood that defendant had accepted the facts and reasoning laid out above such that it agreed the refunds were appropriately sought for 2006. *Id*. at ¶ 25. According to plaintiff, where he 1) specifically notified defendant of the basis for the 2006 filing and it was accepted, and 2) notified the IRS that his claim for a refund covered years other than 2006 and 2007, then defendant has waived its right to raise this new issue in this litigation. *See U.S. v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933) (holding that the USA waives claims where it considers them during a refund claim but does not dispute them).

Plaintiff notes that although the lawsuit against the Sellers was settled in 2009 (*Id*. at ¶ 31), there was no "recovery" in 2009, as falsely claimed by defendant. First of all, the payments under the settlement were not complete until

12

2010.  *Id*. at ¶ 32.  Secondly, the $40,000 settlement was for an amount less than

plaintiff had already paid in attorney fees and costs at that point.  *Id*. at ¶ 33.

Third, as defendant is aware, the funds were never released to plaintiff.  *Id*. at ¶ 34.

Thus, there was no "recovery" in 2009.  Rather, there were only additional losses

that would go into the adjusted basis of the property.  26 C.F.R. § 1.165-1(c).

Finally, plaintiff says he experienced continuing losses associated with the

adjusted basis of the property until 2011.  *Id*. at ¶ 35.  Defendant's attorney

has not bothered to adequately investigate the facts in this matter before

submitting his motion, or he would have known that the losses were still ongoing

in 2011.  As a result, plaintiff contends that if this Court were to hold that 2006

was not the correct claim year, 2011 is the correct year for determining the losses,

not 2009.

Even if plaintiff submitted his claim for the wrong year, which he did not,

he maintains that would not be a basis for disposition of this refund suit.  In cases

where a refund was claimed for the wrong year, courts do not dismiss the action as

suggested by defendant, but rather Courts should hold the case in abeyance,

pending resolution of a new refund claim.  The technicalities and complexities of

rules associated with claiming refunds of taxes often lead to "harsh results," even

where a taxpayer is entitled to a refund.  The mitigation provisions of 26 C.F.R.

§ 1.1311-1314 are meant to "mitigate" these effects by allowing a Taxpayer to

correct an error such as an incorrect year of filing without the statute of limitations barring such a change.  Although the mitigation provisions are not needed here because plaintiff could adjust his refund claim for 2011 without running afoul of a statute of limitations, the best manner of handling the this case and reasoning for doing so are the same here as in mitigation provision cases.  The case of *J.B.N. Telephone Co. v. USA*, 638 F.2d 227, (10th Cir. 1981) is instructive of how the mitigation provisions should be addressed in a refund suit involving a refund claim submitted for the wrong year.  In that case, the taxpayer submitted a refund claim for 1972, instead of 1971, the appropriate year.  The Court held that, although a new refund claim must be filed with the IRS to cover 1971, the refund suit before the Court should not be dismissed because the purposes of the mitigation provisions that allow such corrections are remedial, and requiring a new suit would require extra effort of a plaintiff that was not warranted.  Plaintiff contends that the same treatment should be had in this case if this Court were to determine that the refund is not, at least in part, appropriately submitted for 2006 or 2007.  This is particularly true here, where defendant claims that plaintiff's claim should be denied on other grounds.  If this Court were to dismiss plaintiff's claim each time an error needed to be corrected under the mitigation provisions, then the costs could become substantial at $400 per new complaint filed, not to mention the time and effort of plaintiff or the delay in litigating this matter.

14

Indeed, the IRS has already rejected plaintiff's claim wrongly on a number of occasions for incorrect information, although plaintiff prevailed repeatedly in the appeals process.

Moreover, although the mitigation provisions that allow for the correction of errors are "complicated and technical" in addition to "convoluted" and "at odds with those provisions' intended purpose—to 'provide for mitigation of some of the inequities under the Income Tax Laws.'" *Id.*; *see e.g.*, *O'Brien v. USA*, 766 F.2d 1038 (7th Cir. 1985), citing *Olin Mathieson Chemical Corp. v. United States*, 265 F.2d 293, 296 (7th Cir. 1959). As a result, navigating the provisions in and out of refund suits before this Court would be absurdly difficult. In interpreting how to allow taxpayers to correct errors, courts should be mindful that the purposes are remedial, not punitive, and should be interpreted in a way that allows for equitable solutions to the maze of technicalities involved. *See J.B.N. Telephone Co. supra*. If the refund claim was submitted for the wrong year, plaintiff contends that the Court should order the parties to timely resolve a new refund claim while this case is held in abeyance.

## III. ANALYSIS AND CONCLUSION

The parties spend much of the reply and sur-reply arguing about whether plaintiff properly asserted a refund claim in any year besides 2006 and 2007. Plaintiff's claim that his refund claim may be appropriate in other years is easily

15

resolved, given the Court's previous decision denying plaintiff Rule 56(d)

discovery, to which neither party objected.  This Court previously concluded that,

while plaintiff says that he made an "informal" claim for other years, this claim

fails because he never filed a formal claim.  (Dkt. 27).  As explained in

*Greene-Thapedi v. U.S.*, 549 F.3d 530 (7th Cir. 2008), while an informal claim

may permit a refund claim to go forward, that is only permitted where such an

informal claim is followed up by a formal claim.  In reversing the district court's

decision that the plaintiff's informal claim conferred the court with subject matter

jurisdiction, the Seventh Circuit explained:

> The district court held that Ms. Greene-Thapedi's
> informal claim conferred it with subject matter
> jurisdiction. However, her subsequent failure to file a
> formal claim barred the court from exercising any
> jurisdiction over the claim. *See United States v. Kales*,
> 314 U.S. 186, 194, 62 S.Ct. 214, 86 L.Ed. 132 (1941)
> (noting that, in applying tax regulations, the Court "has
> often held that a notice fairly advising the [Internal
> Revenue] Commissioner of the nature of the taxpayer's
> claim, which the Commissioner could reject because [it
> was] too general or because it does not comply with
> formal requirements of the statute and regulations, will
> nevertheless be treated as a claim where formal defects
> and lack of specificity have been remedied by
> amendment filed after the lapse of the statutory period");
> *PALA, Inc. Employees Profit Sharing Plan & Trust
> Agreement v. United States*, 234 F.3d 873, 879 (5th Cir.
> 2000) (holding that "courts will excuse 'harmless
> noncompliance' with the formalities prescribed for
> refund claims," provided that the taxpayer corrects the
> formal deficiencies at a later time). In previous cases that

16

have applied the informal claim doctrine, the taxpayers followed their informal submissions with proper formal claims before initiating litigation. Requiring compliance with the administrative exhaustion requirement gives the Government a full opportunity to address the problem administratively. *BCS Fin. Corp. v. United States*, 118 F.3d 522, 524-25 (7th Cir. 1997). The informal claim doctrine is predicated on the expectation that any formal deficiency will at some point be corrected. *PALA*, 234 F.3d at 879. To hold otherwise would eliminate, as a practical matter, the formal claim requirement. Because Ms. Greene-Thapedi failed to perfect her administrative claim for a refund in the tax year to which her initial refund was applied, the district court lacked subject matter jurisdiction.

*Id*. at 533 (footnote omitted). As observed in the Court's December 2, 2014 Order, "plaintiff does not claim or allege anywhere that he followed up any informal refund claim for any other tax year with a formal claim before instituting this litigation." (Dkt. 27). Thus, as the Court already determined, plaintiff's claims in this case are limited to his refund claims for tax years 2006 and 2007.

Thus, the question remains as to whether plaintiff had a reasonable prospect of recovery in 2006 when he claims that he incurred the casualty/theft loss. Section 165(a) of the Internal Revenue Code states: "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." *Alioto v. C.I.R.*, 699 F.3d 948, 953 (2012), quoting 26 U.S.C. § 165(a). For individuals, these deductions are limited to losses incurred in a trade or business, or otherwise incurred in a transaction entered into for profit,

17

and to losses arising from certain casualties, such as fire, or from theft. *See id*., citing § 165(c). A loss deduction under § 165(a) "shall be allowed ... only for the taxable year in which the loss is *sustained*." *Id*., quoting Treas. Reg. § 1.165-1(d)(1) (emphasis added). When an event results in a loss that gives rise to a "claim for reimbursement with respect to which there is a reasonable prospect of recovery," the loss will not be treated as sustained "until it can be ascertained with reasonable certainty whether or not such reimbursement will be received." *Id*., quoting § 1.165-1(d)(2)(i). Further, "[w]hether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances." *Id*.

As explained by the Sixth Circuit in *Alioto*, the determination of whether a reasonable prospect of recovery exists is an objective inquiry, and the court "must determine what was a 'reasonable expectation' as of the close of the taxable year for which the deduction is claimed." *Id*. at 953, quoting *Ramsay Scarlett & Co. v. Comm'r*, 61 T.C. 795, 811 (1974), *aff'd*, 521 F.2d 786 (4th Cir. 1975); *see also Vincentini v. Comm'r*, 429 Fed.Appx. 560, 564 (6th Cir. 2011) (stating that a determination of whether a reasonable prospect of recovery existed for a particular taxable year involves an objective standard). Further, the analysis "requires a practical approach" and involves consideration of "all pertinent facts and circumstances." *Alioto*, 699 F.3d at 953, quoting *Boehm v. Comm'r*, 326 U.S. 287,

292 (1945). Thus, the taxpayer's honest, subjective belief as to the prospect of recovery cannot be "the controlling or sole criterion" used to determine when a loss is sustained. *Alioto*, 699 F.3d at 953, quoting *Boehm*, 326 U.S. at 292; *see also Boehm*, 326 U.S. at 292. ("[A] determination of whether a loss was in fact sustained in a particular year cannot fairly be made by confining the trier of facts to an examination of the taxpayer's beliefs and actions.").

Ultimately, the burden is on the taxpayer to establish that he had a deductible loss. *Zinn v. U.S.*, 885 F.Supp.2d 866, 872 (N.D. Ohio 2012), citing *Boehm*, 326 U.S. at 294; *Jeppsen*, 128 F.3d at 1418. The IRS's tax determinations are presumed to be correct and "the burden rests upon the taxpayer to prove all the facts necessary to establish the illegality of the collection." *Sherwin–Williams Co. v. United States*, 403 F.3d 793, 796 (6th Cir. 2005), quoting *Niles Bement Pond Co. v. United States*, 281 U.S. 357, 361 (1930). "A reasonable prospect of recovery exists when the taxpayer has bona fide claims for recoupment from third parties or otherwise, and when there is a substantial possibility that such claims will be decided in his favor." *Vincentini v. C.I.R.*, 420 Fed.Appx. 560, 564 (6th Cir. 2011), quoting *Ramsay Scarlett & Co. v. Comm'r*, 61 T.C. 795, 811, (1974) (citations omitted), *aff'd*, 521 F.2d 786 (4th Cir. 1975). This is an objective standard, where the Court must examine a taxpayer's reasonable expectations at the close of the taxable year in which the deduction was claimed. *Vincentini*, at

19

564, citing *Ramsay Scarlett & Co.*, 61 T.C. at 811. Taxpayers need not refrain

from taking a loss deduction simply because there exists a remote or nebulous

possibility of recovery. *Id.*, citing *United States v. S.S. White Dental Mfg. Co. of

Pa.*, 274 U.S. 398, 402-03 (1927) (the tax code does "not require the taxpayer to

be an incorrigible optimist"); *Rudiger v. Comm'r*, 22 B.T.A. 204, 206 (1931)

(taxpayer does not have to postpone a loss deduction when there is only a "bare

hope" of recoupment).  Still, in a year where the prospect of recovery is simply

unknowable, a theft-loss deduction under section 165 is inappropriate. *Id*. at 564,

citing *Jeppsen*, 128 F.3d at 1418.  Contrary to plaintiff's position, even a

reasonable prospect of partial recovery (which plaintiff concedes he had in 2006)

is sufficient to delay a taxpayer from claiming a loss deduction until the litigation

concludes.  *Zinn v. U.S.*, 885 F.Supp.2d at 871, citing *Estate of Scofield v.

Comm'r*, 266 F.2d 154, 159 (6th Cir. 1959) ("Normally where a taxpayer is in

good faith willing to go to the trouble and expense of instituting suit to recoup a

23(e) type loss, there is as a matter of fact sufficient chance of at least part

recovery to justify that taxpayer in deferring the claim of a loss deduction under

Section 23(e) until the litigation in question is concluded.  This is not to suggest

that in some cases the facts and circumstances will not show such litigation to be

specious, speculative, or wholly without merit and that the taxpayer hence was not

reasonable in waiting to claim the loss as a deduction.  However, in the absence of

such circumstances, a taxpayer who feels that chance of recovery is sufficiently probable to warrant bringing a suit and prosecuting it with reasonable diligence to a conclusion is normally reasonable in waiting until the termination thereof the claim a Section 23(e) deduction.").

In this case, plaintiff, who bears the burden of proof, offers only his own testimony in support of his assertion that the prospect of recovery in 2006 was not reasonable.  For example, in *Vincentini*, the plaintiff failed to offer anything but his own testimony to show that he had no reasonable prospect of recovery in the tax year at issue.  While the plaintiff claimed to have attempted to seek the return of his money, that testimony was uncorroborated by any documentary evidence. *Id*. at 564-565.  Similarly, in *Alioto*, the court rejected plaintiff's purported evidence in support of his claim of abandonment because, while he testified that he sent an email abandoning his claim, he failed to produce the email showing that such a communication occurred.  Thus, his testimony only supported his subjective understanding that he would not be paid back and his testimony alone did not satisfy the "objective evidence" requirement to prove abandonment. *Id*. at 954.  In this case, plaintiff offers his own testimony regarding a lengthy "investigation" into whether the Sellers had funds to pay his claim and his conclusion that they did not.  However, plaintiff offers no objective, supporting, or corroborating evidence.  Rather, just as *Alioto* and *Vincentini*, he offers only his

21

own testimony in this regard.  Therefore, the undersigned concludes that plaintiff has failed to meet his burden of proof and the IRS's determination is entitled to deference.  Summary judgment should be granted in favor of the United States.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 26, 2015                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 26, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Daniel Skidmore and Patrick B. Gushue.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov